**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

*********************************************
                                     *

Scott Traudt,                          *

               Plaintiff             *

                                       *

         v.                        *         Docket No.

                                       *         **JURY TRIAL DEMANDED**

Lebanon Police Department, City of Lebanon   *

                                       *

Officer Phillip Roberts,             *

       Individually and in his Official Capacity   *

                                       *

Officer Richard Smolenski,          *

       Individually and in his Official Capacity   *

                                       *

Chief James Alexander,            *

       Individually and in his Official Capacity   *

                                       *

Chief Gary J. Smith,              *

       Individually and in his Official Capacity;   *

                                       *

           Defendants           *

                                       *

*********************************************

## **COMPLAINT**

### **INTRODUCTION**

1.  This is an action for money damages and injunctive relief, brought pursuant to 42 U.S.C. § 1983, the  Fourteenth Amendment to the United States Constitution and Part I, Article 15 of the New Hampshire Constitution, and under the law of the State of New Hampshire, against Officer Phillip Roberts, Officer Richard Smolenski, Chief or then Deputy Chief James Alexander, Jr., Chief Gary J. Smith as police officers/police chiefs of the Lebanon Police

1

Department in the City of Lebanon, in their individual and official capacities and against the City of Lebanon, New Hampshire.

2.   Plaintiff Scott Traudt alleges that Defendants Roberts, Smolenski, did not disclose exculpatory information, namely *Brady/Laurie* information, of prior discipline while employed by the Lebanon Police Department before, during or after the Plaintiff's trial.  Plaintiff also alleges that Chief Alexander or Chief Smith also did not remit or disclose this information, to the Grafton County Attorney pursuant to internal municipal polices.

3.   Plaintiff alleges that the withholding of this exculpatory information violated his constitutional rights under the Fourteenth Amendment to the United States Constitution and under Part I, Article 15 to the New Hampshire Constitution.

4.   These violations were committed as result of the policies and customs of the City of Lebanon Police Department, and that the City of Lebanon is liable under the theory *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for the torts committed by the Defendants Roberts, Smolenski, Alexander, and Smith.

## PARTIES

5.   Scott Traudt (hereinafter referred to as "Plaintiff") is an individual adult and a resident of Strafford, Vermont.

6.   Defendant, Officer Phillips Roberts (hereinafter referred to as "Roberts") is or was at all times mentioned herein, principally an officer of the Lebanon, New Hampshire, Police Department when the relevant events occurred. He acted in concert with the other Defendants and is named as a Defendant in both his individual and official capacities.

7.   Defendant, Officer Richard Smolenski (hereinafter referred to as "Smolenski") is or was at all times mentioned herein, principally an officer of the Lebanon, New Hampshire, Police

Department when the relevant events occurred. He acted in concert with the other Defendants and is named as a Defendant in both his individual and official capacities.

8.   Defendant, Chief James Alexander Jr. (hereinafter referred to as "Chief or Alexander") is or was at all times mentioned herein, principally a chief or deputy chief of the Lebanon, New Hampshire, Police Department when the relevant events occurred. He acted in concert with the other Defendants and is named as a Defendant in both his individual and official capacities.

9.   Defendant, Chief Gary J. Smith (hereinafter referred to as "Chief Smith") is or was at all times mentioned herein, principally a chief or deputy chief of the Lebanon, New Hampshire, Police Department when the relevant events occurred. He acted in concert with the other Defendants and is named as a Defendant in both his individual and official capacities.

10. Defendant, Lebanon Police Department (hereinafter referred to as either "Police Department"), is located in Grafton County, New Hampshire.  The Police Department maintains and operates the Police Department for which the other Defendants worked at or for at all times relevant hereto. It is the public employer of Defendants Roberts, Smolenski, Alexander, and Smith. The Lebanon Police Department is a municipal department of the City of Lebanon and is wholly owned by the City of Lebanon.

11. The City of Lebanon (hereinafter referred to as "the City"), is located in Grafton County, New Hampshire.  The City of Lebanon is a local governmental unit which maintains, owns, and operates a Police Department for which the other Defendants worked at or for at all times relevant hereto. It is a municipal corporation and the public employer of Defendants Roberts, Smolenski, Alexander, and Smith.

## JURISDICTION

12. The Court has original jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343 over Plaintiff's cause of actions arising under the Constitution of the United States and 42 U.S.C. § 1983.  The Court has supplemental jurisdiction over Plaintiff's cause of actions arising under the New Hampshire state law pursuant to 28 U.S.C. § 1367.

13. This Court has personal jurisdiction over all the Defendants by virtue of their actions in this District, and because a substantial part of the relevant events occurred in this District.

14. The amount in controversy exceeds jurisdictional requirements of exceeding $75,000 exclusive of interest and cost.

## VENUE

15. Venue in the United States District Court for the District of New Hampshire is proper pursuant to 28 U.S.C. § 1391, in that all parts of the events giving rise to Plaintiff's claims occurred in  Lebanon, New Hampshire. 28 U.S.C. § 1391 (b)(2).

## FACTUAL BACKGROUND

16. On or about the early morning hours of January 14, 2007, Plaintiff was in an automobile when his then wife, Victoria Traudt (hereinafter referred to as "Victoria") was stopped at the intersection of South Main Street in Lebanon, New Hampshire by members of the Lebanon New Hampshire Police Department for an alleged motor vehicle violation.

17. Victoria, signaled her intention to turn before the light turned red and did not violate any traffic laws.

18. Officer Roberts claimed that the vehicle passed through the intersection without stopping for a red-light signal on South Main Street.

19. Officer Roberts then activated his vehicle's overhead police lights and stopped the vehicle driven by Victoria.

20. Officer Roberts approached the vehicle and asked Vicotria for her license and registration.  Initially, Victoria could not locate the vehicle's registration.

21. Officer Roberts then returned to his police cruiser to confirm Victoria's license.

22. Victoria then located her vehicle registration, exited her vehicle, and went back to the police cruiser occupied by Officer Roberts.

23. While back at the police cruiser, Officer Roberts began to question Victoria about the events of the evening prior to the stop.

24. Victoria replied to the concerns of the officer that she had consumed alcoholic beverages earlier in the evening.

25. Officer Roberts then asked Victoria to submit to a "field sobriety test", and she agreed.

26. During this conversation, Cpl. Smolenski arrived on the scene. During the first field sobriety test, Scott Traudt exited the vehicle.

27. Plaintiff then inquired if his wife was okay and remained by the passenger side door. Cpl. Smolenski then began yelling at the Plaintiff to return to the passenger side seat of the vehicle.

28. At this point, Officer Roberts then radioed for "backup." Another officer arrived at the scene.

29. The two officers then approached the plaintiff.  The officers grabbed the Plaintiff and forced him to the ground in front of the vehicle stopped.  During this altercation, the officers repeatedly punched the Plaintiff, forcing his face into the ground and his arms behind his back.

30. The Officers then dragged the Plaintiff while simultaneously choking, punching, pepper spraying and using their batons on the Plaintiff.  These actions left the Plaintiff with severe injuries.

31. After the assault on the Plaintiff, a third Officer arrived on the scene.  The Plaintiff was handcuffed and taken to the local police department, Lebanon police station.  The Plaintiff was placed in a cell while still handcuffed for an extended period of time.

32. The Plaintiff was then indicted for one court of disorderly conduct in violation of NH RSA 644:2 II(d) and two counts of Simple Assault (215-2007-CR-00246) in violation of RSA 651:6(g) and RSA 631:2-a.

33. There was no recording of the police stop and subsequent events. The officer recitation of the events was established by testimony only, particularly the testimony of Smolenski and Roberts.

34. Plaintiff was convicted by a jury of one assault charge and disorderly conduct. Officers Smolenski and Robberts testified at the trial.  Prior to trial the Plaintiff was not provided with relevant disciplinary records of the officers. At trial the prosecutors during closing argument asserted that the officers did not have disciplinary records. .

35. During the trial, the state emphasized the credibility of the two officers.  The prosecutor stated, "There's been absolutely no evidence of any kind of a disciplinary mark on [Robert's] record" and "absolutely no evidence of any disciplinary mark on [Smolenski's] record, no evidence of any prior complaint."

36. Officers Roberts and Smolenski as well as Chiefs Alexander and Smith, knew of the request for the disciplinary records of each officer and had an affirmative duty to ensure that the County Attorney's office has these records, if those records existed.

37. By denying that any records existed and were subject to disclosure, the Officers and Chiefs of the Lebanon Police Department made the unilateral decisions to withhold records that could have contained information that was material and relevant to the Defendant's defense.

38. The Plaintiff was convicted and sentenced to one to three years in prison.  The Plaintiff then appealed his conviction to the New Hampshire Supreme Court.  The Court upheld his conviction.

39. Plaintiff then served his sentence in the New Hampshire State Prison and was paroled.

40. The Plaintiff then filed a series of motions for a new trial.  Separately, the Plaintiff filed a pro se lawsuit in U.S. District Court of the District of New Hampshire in 2010 against Roberts, Smolenski and the City of Lebanon seeking damages for injuries he said he received in the incident and for the officers violating his civil rights.

41. This Court dismissed the lawsuit on July 12, 2013.  However, during the discovery process, the Plaintiff learned that Smolenski has been disciplined by the Lebanon Police Department in 2006 and prior to Traudt's arrest, the details of which were not provided at the time. This Court did not address the Laurie issue. *See* *Traudt v. Roberts*, 2013 US Dist. LEXIS 97804 (D.N.H., Summary Order, LaPlante, L., July 12, 2013).

42. During this process, Smolenski reaffirmed that he had no complaints against [him] for misconduct in [his] personnel file.  *See* Excerpt of Deposition of April 4, 2013.

43. On or about May 17, 2013, the Defendants Chief Smith and Chief Alexander provided the United States District Court, District of New Hampshire with a confidential affidavit that stated, "we notified the County Attorney and courts on three occasions when Lebanon police officers conduct and behavior involved deliberate lying during an administrative hearing, or

other official proceedings such as an internal investigation." *See* Doc.42-2; Case 1:10-cv-00012-JL.

44. The affidavit continued to state, "based on our background, training, experience, and our professional judgment in law enforcement, [redacted]'s conduct and behavior in this matter, [redacted] was not and is not Laurie material…At no time did we believe that the conduct or behavior exhibited by [redacted] in [redacted] warranted disclosure under Laurie." *Id*., *see also State v. Laurie*, 139 N.H. 330 (N.H. 1995). It should also be noted that for many years in New Hampshire, police chiefs have had the authority to include an officer's name on the Laurie list when *they* believe it is warranted.

45. On or about May 16, 2013, the Plaintiff filed a pro se petition for a writ of habeas corpus, citing the state's failure to disclose this evidence as one of several claims.  This Court denied the Plaintiff's habeas petition on March 24, 2014, ruling that Traudt lacked standing because he was no longer in prison.

46. In 2019, Traudt moved for a new trial in Grafton County Superior Court, again arguing that the state's failure to disclosure Smolenski's disciplinary records violated his right to fair trial.

47. This claim was unfruitful as Traudt did not know the details of the officer's misconduct and the motion was denied.  The motion was appealed, and the New Hampshire Supreme Court affirmed the lower court's ruling on January 26, 2021.

48. In 2020, a ruling by the New Hampshire Supreme Court allowed for the disclosure of police personnel records under certain circumstances, the so-called "Laurie List" was not exempt from the Right to Know Statute, "only a narrow set of governmental records, namely those pertaining to an agency's internal rules and practices governing operations and employee

relations" falls within the Right to Know exemption.  *See Seacoast Newspapers, Inc. v. City of Portsmouth*, 173 N.H. 325 (N.H. 2020) and RSA 91-A:5, IV.

49. In 2021, the Plaintiff received details of Smolenski's disciplinary records, which showed that the officer received a three-day suspension and six months on probation for misconduct related to the officer's extramarital affair with an 18-year-old woman.

50. This disciplinary complaint was reported on March 17, 2006 against Officer Smolenski. The nature of the allegation was "conflict of interest, Cpl. Smolenski shouldn't have contacted her regarding a harassment complaint." The complainant asserted that Officer Smolenski was personally involved with another person, outside of his marriage, and personally made a phone call (using another person's phone) to the complainant (about the harassment claims) while he was on duty.  This conflict gave the appearance of not being an impartial party while conducting his official police officer duties.

51. In the ensuing investigation, a confidential party (a third party) alluded to having a sexual, physical relationship with Cpl. Smolenski for two to three weeks.  In addition to having the extramarital affair, emails were sent to this confidential party from Cpl. Smolenski while on duty. These communications were sent by Cpl. Smolenski during his tours of duty as an officer for the City of Lebanon, in direct violation of police policies and procedures.

52. Finally, Cpl. Smolenski admitted to "sending emails from the station, while on duty…using City resources. Cpl. Smolenski said he had." And that those emails were "not a work nature." And when asked to estimate how many times he met with [redacted] while on duty, Cpl. Smolenski replied, "10-12 times."

53. These allegations and the resulting investigation resulted in the finding of a (1) violation of the City Internet policy, (2) conduct unbecoming an officer and (3) conflict of interest allegations being sustained against Cpl. Smolenski by his superior officers.

54. This behavior ultimately led to Officer Smolenski being suspended without pay for a period of three days and being placed on probationary status for six months by the Lebanon Police Department.

55. This disciplinary record clearly was (1) inconsistent with the truth ascertainable by information in the possession of a State actor; or (2) exploited an information advantage created by a State's actor failure to disclose the information to the contrary.

56. Additionally, under the Police Standards and Training Regulations, adultery is the type of activity classified as "lack of good moral character" that "would adversely reflect on a person's fitness to perform law enforcement or corrections duties…" *See* NH Admin. R. Pol 402.02(1)(4).

57. Similarly, Roberts also had a previous complaint filed against him and a host of other police officers in 2002.

58. Also in 2021, the Plaintiff received details of Roberts's disciplinary records. Roberts was involved in alleged assault of an animal control officer in or around 2002 with Russell A. Dodge. The official complaint was submitted to Hartford Police Department in Vermont but was also provided to Lebanon Police Department as Roberts was also a current Lebanon officer at the time of the complaint.

59. Upon information and belief, this complaint was reclassified as a noise complaint as officers on duty attempted to prevent the complainant from making an official complaint against the officers involved.  After an internal investigation, the Hartford Police Department issued

actions that ranged from suspensions without pay for two working days to suspension for 10 working days for the officers involved.

60. Upon information and belief, Officer Roberts involvement with the complaint with Hartford Police Department was provided to the Lebanon Police Department. This complaint from the previous incident was not disclosed to the County Attorney's office before, during or after the Plaintiff's trial.

61. The victim, Mr. Dodge, was interviewed by a private Investigator Frank R. Santin in 2021. Mr. Dodge indicated during the interview that he ended up leaving the area as the Animal Control Officer because of the complaint being re-filed as a noise complaint and relocated across the country to avoid the situation/persons involved with Hartford Police Department.

62. At no point until 2021, did Officer Roberts or the Lebanon Police Department or any other individual officer, or any individual police chief disclose this information to the Plaintiff.

63. Under RSA 105:13-b, I, the State has a "duty to disclose exculpatory evidence that should have been disclosed prior to trial under [the police records law] is an ongoing duty that extends beyond a finding of guilt." Despite this duty, the State, Municipality, and the individual officers and police chiefs did not disclose this information despite the numerous requests through the years for this material that would be relevant to guilt or punishment under *Brady* or *Laurie*.

64. In April 2022, Plaintiff filed a petition for writ of error coram nobis, asking the Court to correct a fundamental error in the Plaintiff's conviction based on the lack of disclosure by the Lebanon Police Department. This failure to disclose the information violated Traudt's right to a fair trial under Part 1, Article 15 of the New Hampshire Constitution, and the Fourteenth Amendment of the U.S. Constitution.

65. One or about January 3, 2023, Judge Bornstein vacated the Plaintiff's conviction and granted him a new trial, based on the state's failure to disclose. "At the very least, the information should have been disclosed to the Defendant because, given the history of the case was that the officers involved were renegade police officers and were not credible, the evidence of Smolenski's investigation and discipline would have been relevant to that defense or otherwise used as impeachment evidence."

66. Finally, The State of New Hampshire Nolle Prossed the charges against the Plaintiff on March 2, 2023.

**COUNT I (VIOLATION OF CIVIL RIGHTS UNDER COLOR OF LAW - THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION & PART 1 ARTICLE 15 OF THE NEW HAMPSHIRE CONSTITUTION – 42 USC § 1983— AGAINST ALL DEFENDANTS)**

67. Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

68. At all relevant times the Defendants were acting within the scope of their duties as employees of the Lebanon Police Department and the City of Lebanon.

69. Defendants, Officers Roberts, Smolenski, and Chief Alexander and Deputy or Chief Smith unlawfully deprived Plaintiff of his constitutional rights without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States and in violation of Part 1, Article 15 of the New Hampshire Constitution, by failing to comply with the Laurie rule and turn over the exculpatory disciplinary matters involving officers in the Lebanon Police Department over as evidence.

70. Defendants, refused to disclose information that was favorable or admissible and should have been disclosed to Traudt and the information was material to the defense of Traudt's case because the State's failure to disclose such evidence affected the outcome of the case.

71. Despite having the responsibility and control of disclosures of previous discipline records, the Defendants continually refused, misrepresented, and purposely withheld these records before, during and after the Plaintiffs trial.

72. New Hampshire courts generally treat the "failure of the police to disclose exculpatory evidence to the prosecutor, who in turn could have turned it over to the defense…no differently than if the prosecutor failed to turn it over to the defense." *See* *State v. Lucius*, 140 N.H. 60, 63 (1995).

73. The Defendants failed to honor their duty to disclose exculpatory discipline records either under *Brady* and/or *Laurie* and failed to notify the prosecutors at the time of indictment, during the pendency of the trial, after the conclusion of trial and all times since the conclusion of the trial.  Acting without due care and without  a reasonable belief that their conduct was lawful the Defendants caused substantial damage to the Plaintiff, that resulted in his incarceration, loss of employment and other monetary damages.

74. As a result of the actions of the Defendants, as described in the Complaint, the Plaintiff is entitled to compensatory, exemplary, punitive and/or presumed damages for violations of the Plaintiff's Fourteenth Amendment rights under the United States Constitution and rights under Part I, Article 15 of the New Hampshire Constitution, including attorney fees and costs.

**COUNT II  (VIOLATION OF CIVIL RIGHTS UNDER COLOR OF LAW - THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION & PART 1 ARTICLE 15 OF THE NEW HAMPSHIRE CONSTITUTION – 42 USC § 1983 — AGAINST ALL DEFENDANTS)**

75. Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

76. At all relevant times the Defendants acted outside the scope of their duties but still under color of state law.

77. Defendants, Roberts, Smolenski, Alexander and Smith knowingly, willfully, and unlawfully deprived Plaintiff of his constitutional rights without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States and in violation of Part 1, Article 15 of the New Hampshire Constitution, by failing to comply with *Brady and/or Laurie* and turn over the exculpatory disciplinary matters involving officers in the Lebanon Police Department over as evidence.

78. The Defendants deprived the Plaintiff of exculpatory material to further his defense in a fair trial.

79. Defendants, refused to disclose information that was favorable or admissible and should have been disclosed to Traudt and the information was material to the defense of Traudt's case because the State's failure to disclose such evidence affected the outcome of the case.

80. Despite having the responsibility and control of disclosures of previous discipline records, the Defendants continually refused, misrepresented, and purposely withheld these records before, during and after the Plaintiffs trial.

81. New Hampshire courts generally treat the "failure of the police to disclose exculpatory evidence to the prosecutor, who in turn could have turned it over to the defense…no differently than if the prosecutor failed to turn it over to the defense." *See State v. Lucius*, 140 N.H. 60, 63 (1995).

82. The Defendants failed to disclose exculpatory discipline records either under *Brady* and/or *Laurie* and failed to notify the prosecutors at the time of indictment, during the pendency of the trial, after the conclusion of trial and all times since the conclusion of the trial.  Acting without due care and without  a reasonable belief that their conduct was lawful the Defendants

caused substantial damage to the Plaintiff, that resulted in his incarceration, loss of employment and other monetary damages.

83. As a result of the actions of the Defendants, as described in the Complaint, the Plaintiff is entitled to compensatory, exemplary, punitive and/or presumed damages for violations of the Plaintiff's Fourteenth Amendment rights under the United States Constitution and rights under Part I, Article 15 of the New Hampshire Constitution, including attorney fees and costs.

**COUNT III (VIOLATION OF CIVIL RIGHTS UNDER COLOR OF LAW - THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION & PART 1 ARTICLE 15 OF THE NEW HAMPSHIRE CONSTITUTION - 42 U.S.C. § 1983 AGAINST LEBANON POLICE DEPARTMENT, CITY OF LEBANON)**

84. Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully rewritten herein.

85. Defendants at all times relevant to this action were acting under the color of state law.

86. The Lebanon Police Department and the City of Lebanon acted recklessly, intentionally and with gross negligence for failure to train its police force in the proper procedures in disclosing *Brady and/or Laurie* information to the Plaintiff  before, during and after the Plaintiffs trial.

87. Ultimately, every prosecutor is responsible for determining whether the information in a police officer's personnel file is subject to disclosure based upon the facts and circumstances of a particular case, the officer's role in the investigation, the potential defenses being presented, and a review of the pertinent rules of evidence.

88. The internal Lebanon Polce Department policies and practices namely, the Disclosure and Retention of Personnel Polices, leaves it up to the very department accused of misconduct to

determine if the disciplinary record contained in the individual police personnel files warrant disclosure.

89. If the request for the disciplinary files relate to a specific, pending criminal case and the file has not already been declared subject to a *Laurie* disclosure, the Police Chief shall notify the requesting party that upon receipt of a written court order, the file will be made available to the trial judge for an *in-camera* review.

90. Pursuant to Article 31, Section E of the IBPO Union Contract with the City of Lebanon (2006-2010), disciplinary matters involving police officers are removed from the officers personal file forty-eight (48) months after the date of entry.

91. These records are removed from the personnel file pursuant the agreement between the Lebanon Police Department union and City of Lebanon per the Union Contract.

92. The disciplinary investigation and records are retained by the Lebanon Police Department in separate confidential sealed files for an unknown period of time.

93. The lack of training was so reckless that the failure to disclose exculpatory information was a deprivation of the Plaintiff's constitutional rights at and did not allow the Plaintiff to impeach the State's main witnesses violating his right to confrontation.

94. The Lebanon Police Department developed and maintained policies and practices exhibiting reckless indifference to the constitutional rights of persons in the City of Lebanon, which caused the violation of Plaintiff's rights.

95. It was the deliberate, conscious policy and practice of the Lebanon Police Department and the City of Lebanon to have police supervisors determine if information was exculpatory in nature and whether it was disclosed to the local prosecutor.

96.  This policy and practice resulted in the failure to exercise reasonable care in hiring its police officers, including Defendants Smolenski, Roberts, Alexander, and Smith, thereby failing to adequately prevent constitutional violations on the part of its police officers, deputy police chiefs and police chiefs.

97. It was the deliberate, conscious policy and practice of the Lebanon Police Department and the City of Lebanon to inadequately supervise, train and discipline its police officers, deputy police chiefs, and police chiefs, including all Defendants, thereby failing to adequately discourage further constitutional violations on part of the police department.

98. As a result of above-described policies or practice, the police officers of Lebanon Police Department, including all named Defendants, believed that their actions would not be properly monitored and that misconduct records would not be disclosed to the local prosecutors.

99. The above described polices and practices demonstrate a deliberate, conscious indifference to adopt policies necessary to prevent constitutional violations on the part of the Lebanon Police Department and the City of Lebanon to the constitutional rights of persons within the City of Lebanon and were the cause of violations of the Plaintiff's rights alleged herein.

100. The policies and practices employed by the Police Department and the City of Lebanon removed this oversight of alleged misconduct.

101. The Lebanon Police Department and the City of Lebanon are responsible for the actions of the officers, deputy police chiefs and police chiefs under the doctrine of *Monell v. Department of Social Services*.

102. As a result of the actions of the Defendants, as described in the Complaint, the Plaintiff is entitled to monetary, declaratory, or injunctive relief for violations of the Plaintiff's Fourteenth

Amendment rights under the United States Constitution and rights under Part 1, Article 15 of the New Hampshire Constitution, including attorney's fees and costs.

### COUNT IV (NEGLIGENCE- AGAINST ALL DEFENDANTS)

103.  Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully rewritten herein.

104.  Defendants at all times relevant to this action were acting under the color of state law.

105.  Defendants had a duty to disclose favorable information to the Plaintiff before, during and after the Plaintiff's trial.

106.  Defendants by and through their employees/agents breached the applicable duty of care by failing to disclose *Brady and/or Laurie* information to the Plaintiff.

107.  Due to the failures of the Defendants, to disclose favorable information, Plaintiff suffered injuries.

108.  Defendant's actions were the proximate cause of harm to the Plaintiff by depriving him of the right to a fair trial.

109.  That as a direct result of the negligence of the Defendants and breaches of the applicable standard of care of disclosures by the Defendants, resulted in the Plaintiff's deprivation of a fair trial.

110.  As a direct and proximate result of the negligence of the Defendants, Plaintiff has been damaged in the sum in excess of $75,000.00.

### COUNT V (CIVIL CONSPIRACY- AGAINST ALL DEFENDANTS)

111.  Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully rewritten herein.

112. Defendants at all times relevant to this action were acting under the color of state law.

113. Defendants conspired and engaged in an unlawful agreement to accomplish withholding exculpatory/favorable information for the Plaintiff's criminal trial that resulted in the Plaintiff's inability to use favorable information against the State's main two eyewitnesses.

114. Defendants agreed that all parties were to withhold exculpatory/favorable information against the Plaintiff, in violation of the Plaintiff's constitutional rights, to demonstrate the officers in question were rogue and had history of disciplinary complaints in their respective personnel records.

115. The Defendants continually refused, misrepresented, and purposely withheld these records before, during and after the Plaintiffs trial. Each withholding of exculpatory information and the failure to provide such information constituted an overt act in furtherance of the conspiracy. The acts of testifying after not having disclosed exculpatory information beforehand are overt acts in furtherance of the conspiracy.

116. This deliberate and unlawful agreement resulted in the Plaintiff suffering economic damages as a result of unlawful acts by the Defendants in furtherance of the conspiracy.

117. As a result of the actions of the Defendants, as described in the Complaint, the Plaintiff is entitled to monetary, declaratory, or injunctive relief for the civil conspiracy undertaken by the Defendants.

### COUNT VI (CIVIL CONSPIRACY IN VIOLATION OF 42 USC §1985 AGAINST ALL DEFENDANTS)

118. Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully rewritten herein.

119. Defendants at all times relevant to this action were acting under the color of state law.

120.  Defendants conspired and engaged in an unlawful agreement to accomplish withholding exculpatory/favorable information for the Plaintiff's criminal trial that resulted in the Plaintiff's inability to use favorable information against the State's main two eyewitnesses.

121.  Defendants agreed that all parties were to withhold exculpatory/favorable information against the Plaintiff, in violation of the Plaintiff's constitutional rights, to demonstrate the officers in question were rogue and had history of disciplinary complaints in their respective personnel records.

122.  The Defendants continually refused, misrepresented, and purposely withheld these records before, during and after the Plaintiffs trial. Each withholding of exculpatory information and the failure to provide such information constituted an overt act in furtherance of the conspiracy. The acts of testifying after not having disclosed exculpatory information beforehand are overt acts in furtherance of the conspiracy.

123.  This deliberate and unlawful agreement resulted in the Plaintiff suffering economic damages as a result of unlawful acts by the Defendants in furtherance of the conspiracy.

124.  As a result of the actions of the Defendants, as described in the Complaint, the Plaintiff is entitled to monetary, declaratory, or injunctive relief for the civil conspiracy undertaken by the Defendants.

**COUNT VII (NEGLECT TO PREVENT CLAIM UNDER 42 USC §1986 AGAINST CHIEF SMITH, CHIEF ALEXANDER AND THE CITY OF LEBANON, POLICE DEPARTMENT)**

125.  Chief Smith, Chief Alexander and the City of Lebanon Police Department at all times relevant hereto had knowledge of the conspiracy to hide, conceal and to fail and refuse to disclose the exculpatory evidence.

126.   At all relevant times Chief Smith, Chief Alexander and the City of Lebanon Police Department as supervisory authorities, had the power to prevent or to aid in the prevention the objects of the conspiracy.

127.   Chief Smith, Chief Alexander and the City of Lebanon Police Department had a duty to intervene and to prevent the conspiracy and its objectives.

128.   Chief Smith, Chief Alexander and the City of Lebanon Police Department refused and neglected to prevent the conspiracy and its objectives.

129.   As a result Plaintiff suffered the loss of his civil rights that resulted in his wrongful incarceration, loss of employment and other monetary  and non-economic damages.

**CONCLUSION**

WHEREFORE, the Plaintiff prays for the following relief:

A.   On each count in this Complaint, the Court issue  judgment in favor of the plaintiff and award compensatory damages in an amount to be determined at trial, plus reasonable attorney fees pursuant to 42 U.S.C. § 1988, against all Defendants; and

B.   Economic and non-economic damages sustained as a result of the actions of the Defendants herein; and

C.   Punitive damages as allowed by law in an amount sufficient to punish the Defendants intentional, willful, and malicious conduct; and

D.   A permanent injunction against the City of Lebanon and Lebanon Police Department and all persons acting in concert with it from engaging in or abiding by a "Code of Silence" that intentionally and deliberately ignores unlawful conduct by Police Officers, Police Chiefs, the Lebanon Police Department including conduct that violates the mandates of Brady and Laurie and their progeny; and

E.   Enjoin the City of Lebanon and Lebanon Police Department from following policies, practices or procedures which are intended to, and/or known to have the effect of establishing, as accepted practice, the police misconduct as hereinbefore described including policies, practices or procedures that violate Brady and Laurie and their progeny; and

F.   A jury trial on all appropriate issues; and

G.  An award of costs and expenses against all Defendants; and

H.  Award attorney's fees and costs; and

I.  Any and all other relief this Court may deem appropriate.

       Respectfully submitted,
       Scott Traudt
       By and through counsel,
       Brennan Lenehan Iacopino & Hickey

Date:  November 8, 2023    By: /s/ Michael J. Iacopino
       Michael J. Iacopino, Esq. (Bar No. 1233)
       85 Brook Street
       Manchester, NH 03104
       (603) 668-8300
       miacopino@brennanlenehan.com