## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

**********************************
                            *

Scott Traudt,                        *

          Plaintiff         *

                            *

    v.                     *     Docket No. 1:23-CV-00500 - LM-TSM

                            *

Lebanon Police Department, et. al.  *

                            *

          Defendants     *

**********************************

### PLAINTIFF'S OBJECTION TO DEFENDANT'S PARTIAL MOTION TO DISMISS

Now comes the Plaintiff, Scott Traudt, through his counsel, Michael J. Iacopino, objects to the partial Motion to Dismiss (Doc. 7) filed by the Defendants, Lebanon Police Department, City of Lebanon and Phillip Roberts and James Alexander. In support the Plaintiff states:

1.      This suit was filed on November 8, 2023. The Defendants Lebanon Police Department, City of Lebanon and Phillip Roberts and James Alexander filed a Partial Motion to Dismiss on January 26, 2024 (Doc. 7).

2.      On or about February 01, 2024, Plaintiff filed an Assented to Motion to Extend Deadline to File a Response to the Partial Motion to Dismiss. (Doc. 12). Counsel for all Defendants were consulted and assented to an extension of time to respond until February 23, 2024. The Court granted the extension on February 1, 2024.

### STANDARD OF REVIEW

3.      To withstand a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must include factual allegations sufficient to "state a claim to relief that is plausible on its face. " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 570 (2007)). Under this standard, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. Plausibility demands "more than a sheer possibility a defendant has acted unlawfully." Id. Although the complaint need not set forth detailed factual allegations, it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id.

## FACTS

4.      In January 2007, the Plaintiff was traveling in an automobile operated by his then wife, Victoria Traudt (hereinafter referred to as "Victoria") in Lebanon, New Hampshire. Victoria was subsequently stopped by members of the Lebanon New Hampshire Police Department.

5.      As Victoria was turning left, Office Roberts pulled over the vehicle for a motor vehicle stop.

6.      As a result of the motor vehicle stop, the passenger Plaintiff Scott Traudt was indicted for one count of disorderly conduct (NH RSA 644:2 II (d)) and two counts of Simple Assault (RSA 651:6 (g) and RSA 631:2-a).

7.      In a subsequent jury trial, the Plaintiff was convicted of one assault charge and disorderly conduct. Officers Smolenski and Roberts testified at trial. Prior to trial the Plaintiff was not provided with material, exculpatory, and relevant disciplinary records of the officers.

8.      At trial the prosecutor, during closing argument, asserted that the officers did not have disciplinary records. The State emphasized the credibility of the two officers. The prosecutor stated, "There's been absolutely no evidence of any kind of disciplinary mark on (Robert's] record" and "absolutely no evidence of any disciplinary mark on [Smolenski's] records, no evidence of any prior complaint."

2

9.      All Defendants, to include both officers, chiefs, and police department, knew of the request for the disciplinary records of each officer and had an affirmative duty to ensure that the County's Attorney's office was aware of and had the records.

10.     By denying that any records existed or were subject to disclosure, the Officers and Chiefs of the Lebanon Police Department made both unilateral and bilateral decisions to withhold records that contained material, exculpatory and relevant information they were constitutionally obliged to provide to the Plaintiff.

11.     Following the Plaintiff's conviction, he was sentenced to one to three years in prison. The Plaintiff appealed his conviction. The New Hampshire Supreme Court upheld the conviction. After serving his sentence, the Plaintiff filed a series of motions for a new trial.

12.     In 2010, the Plaintiff filed a lawsuit in this Court which was dismissed in 2013. However, during discovery process, the Plaintiff learned that Officer Smolenski was disciplined by the Lebanon Police Department in 2006, the details of which remained confidential and unknown to the Plaintiff. At the time, this Court did not address the exculpatory evidence issue. Traudt v. Roberts, 2013 US Dist. LEXIS 97804 (D.N.H., Summary Order, LaPlante, L., July 12, 2013).

13.     During the discovery phase, Smolenski reaffirmed that he had no complaints against [him] for misconduct in [his] personal file. Excerpt of Deposition of April 4, 2013.

14.     On or about May 17, 2013, the Defendants, Chief Smith and Chief Alexander provided this Court with a confidential affidavit that stated, "we notified the County Attorney and courts on three occasions when Lebanon police officers conduct and behavior involved deliberate lying during an administrative hearing, or other official proceedings such as an internal investigation." (Doc. 42-2; Case 1:10-cv-00012-JL).

3

15.     In May of 2013, the Plaintiff filed a pro se petition for a writ of habeas corpus, citing the state's failure to disclose this evidence as one of several claims. This Court denied the Petition, ruling that the Plaintiff lacked standing because he was no longer in prison.

16.     In 2019, the Plaintiff moved for a new trial in Grafton County Superior Court, again arguing that the state's failure to disclose Officer Smolenski's disciplinary records violated his right to a fair trial. This claim was denied. This decision was appealed but affirmed by the New Hampshire Supreme Court on or about January 26, 2021.

17.     Following a 2020 ruling the Seacoast Newspapers, Inc. v. City of Portsmouth, 173 N.H. 325 (N.H. 2020) and RSA 91-A:5, IV, the Plaintiff received details of Officer Smolenski's disciplinary records. In 2021, the Plaintiff received details of Officer Robert's disciplinary records.

18.     Under RSA 105:13-b, I, the State has a "duty to disclose exculpatory evidence that should have been disclosed prior to trial under [the police records law] is an ongoing duty that extends beyond a finding of guilt." Despite this affirmative duty, the City, the Lebanon Police Department, individual police chiefs and officers did not disclose this information despite numerous requests over the years.

19.     In April 2022, the Plaintiff filed a petitioner for writ of error coram nobis, asking the Court to correct a fundamental error in the Plaintiff's conviction. On January 2, 2023, Judge Bornstein vacated the Plaintiff's conviction and granted a new trial. On March 2, 2023, the State of New Hampshire nolle prossed the charges.

## LEGAL ANALYSIS

**Federal Law Claims**

   a.  **Plaintiff's official capacity against Roberts and Alexander should not be dismissed because they are not duplicative of his claims against the City of Lebanon.**

20.     The Defendant, City of Lebanon, without conceding liability, admits that it responsible for the actions of the individually named officers and police chiefs. (Doc.7, pg. 4).

21.     A State official in his or her official capacity, when sued for injunctive relief, would be a person under 1983 because "official-capacity actions for prospective relief are not treated as actions against the State." Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 n.10 (1989) (quoting Kentucky v. Graham, 473 U.S. 159, 167 n. 14 (1985)).

22.     The Plaintiff's claims clearly ask for prospective injunctive relief against all persons acting in concert with the City of Lebanon and Lebanon Police Department. (Doc. 1, pg. 21).

23.     Additionally, under the doctrine of Ex Parte Young a state official who violates federal law is "stripped of his official or representative character." Ex Parte Young, 209 U.S. 123 (1908).

24.     Thus, the Plaintiff's official capacity claims against Roberts and Alexander should not be dismissed as the claims are not duplicative of the claims against the City of Lebanon.

   b.  **Plaintiffs federal-law claims (Count I, II and III) as premised on Part I, Article 15 of the New Hampshire Constitution should not be dismissed.**

25.     The Defendants allege that Counts I, II, III must be partially dismissed because the Plaintiff cannot sue the Defendants by private right of action for violations of the state constitution.

26.     In fact, Counts I, II and III assert independent state law claims as well as federal claims. In this case if the Court finds the combined method of pleading to be problematic the Plaintiff should be permitted to amend his Complaint to plead the independent state law claims in separate counts.

27.     The Defendant has valid state law claims for violation of his rights under the State Constitution.

28.     While the Defendants are correct that the New Hampshire Supreme Court has not explicitly recognized a right to damages for constitutional injuries, that Court has not held that such injury is not monetarily compensable.

29.     Under New Hampshire law it is a "settled principle that a denial of a constitutional right "demands some vindication in the law." Marquay v. Eno, 139 N.H. 708,721 (1995) (citing Rockhouse Mt. Property Owners Assoc. V. Town of North Conway, 127 N.H. 593, 598 (1986)). The court "ultimately has the authority to fashion a common law remedy for the violation of a particular constitutional right." Id. When established remedies are adequate, the court will avoid the creation of a new remedy. Id. "Where no established remedy exists or the established remedies would be meaningless, however, [the court] will not hesitate to exercise [its] authority to create an appropriate remedy." Id. at 721-22.

30.     Presently, the Plaintiff has alleged that Officers Roberts, Smolenski and Chiefs Alexander and Smith unlawfully deprived the Plaintiff of his constitutional rights without due process of law in violation of both the Fourteenth Amendment and in violation of Pt. 1, Art. 15 of the New Hampshire, by failing to comply with the Laurie and Brady rules and turn over the exculpatory disciplinary matters involving officers in the Lebanon Police Department.  (Doc. 1, ¶ 69).

31.     The  Plaintiff clearly alleges that the failure to turn over exculpatory evidence

violates the Plaintiff's due process constitutional rights protected by both the New Hampshire

Constitution and U.S. Constitution.

32.     As a result of the failure of the Defendants to abide by rules clearly enunciated by

the United States Supreme Court and followed by the New Hampshire courts since 1963 the

Plaintiff lost tens of thousands of dollars from his employment both individually and as a

business owner. He has lost hundreds of days of his liberty due to the wrongful incarceration as

well as his dignity and his business's reputation. These losses are all directly attributable to the

Defendants violations of his rights under the both the New Hampshire Constitution and the U.S.

Constitution. The Defendants cannot give back the Plaintiff's lost liberty or restore his dignity or

reputation. However, the Defendants can remedy his financial injuries. This case fits squarely

within the framework suggested by the Marquay Court where a remedy is required. Counts I, II

and III claims should not be dismissed in any measure and should be read to include federal and

independent state claims.

33.     The Plaintiff is seeking remedies under both state and federal law and the fact that

New Hampshire has not explicitly endorsed a private right of action for state constitutional injury

is not a basis under the current New Hampshire case law to dismiss the Plaintiff's state claims.

34.     Alternatively, the Plaintiff should be permitted to amend his complaint to

separately plead the state constitutional torts.

   c.       **Plaintiff's federal civil conspiracy claim (Count VI) should not be dismissed.**

35.     The Defendants allege the Plaintiff did not set forth allegations that would

suggest, much less prove, that the purported "conspiratorial conduct" was motivated by some

class based discriminatory animus. The Plaintiff disagrees that such animus is a necessary

element of the claim in this case.

36.     The §1985 conspiracy alleged in the Complaint is properly pled and viable under

42 USC §1985 (2).

37.     The first clause of 42 USC §1985 (2) states:

> If two or more persons in any State or Territory conspire to deter, by force, intimidation,
> or threat, any party or witness in any court of the United States from attending such court,
> or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure
> such party or witness in his person or property on account of his having so attended or
> testified, or to influence the verdict, presentment, or indictment of any grand or petit juror
> in any such court, or to injure such juror in his person or property on account of any
> verdict, presentment, or indictment lawfully assented to by him, or of his being or having
> been such juror;

(Emphasis added.)

38.     In Kush v. Rutledge, the Supreme Court analyzed the statutory construction of

§1985 and determined that the first clause applied to claims dealing with matters stemming from

cases in the federal courts and therefore class based discriminatory animus was not a necessary

element of the claim. "Given the structure of § 2 of the 1871 Act, it is clear that Congress did not

intend to impose a requirement of class-based animus on persons seeking to prove a violation of

their rights under the first clause of § 1985(2)." Kush v. Rutledge, 460 U.S. 719, 726 (1983).

39.     In this case the Plaintiff alleges the Defendants conspired to withhold exculpatory

evidence in violation of the Brady doctrine. Brady creates a continuing obligation that does not

require a request or demand and extends beyond a conviction. *See e.g.* R.S.A. 105:13-b ("The

duty to disclose exculpatory evidence that should have been disclosed prior to trial under this

paragraph is an ongoing duty that extends beyond a find of guilt.")

40.     The Complaint asserts facts that demonstrate the continuing violation of Brady

and its impact to injure the Plaintiff in the federal courts. The factual recitations in the Complaint

include the Plaintiffs efforts to vindicate his rights in the federal courts through a habeas petition

and through a *pro se* §1983 lawsuit. See Complaint, ¶¶ 40-45. The Complaint also alleges

liability for the failure to comply with the <u>Brady</u> doctrine in the federal court: "The Defendants

failed to honor their duty to disclose exculpatory discipline records either under <u>Brady</u> and/or

<u>Laurie</u> and failed to notify the prosecutors at the time of indictment, during the pendency of the

trial, after the conclusion of trial and all times since the conclusion of the trial." *See* Complaint

¶¶ 73, 82, 115, 122.

      41.     The Defendants' continuous conspiracy designed to deprive the Plaintiff of the

exculpatory evidence affected not only his criminal trial in state court but continued to  prevent

him from presenting a full case in the federal courts. This could only occur because the

Defendants exercised their powers under state law in an illegal manner that amounts to force,

intimidation, or threat. In doing so they impeded justice in the federal court as well.

42.     Here, the Defendants conspired and engaged in an unlawful agreement to obstruct justice

at both the state and federal level by unlawfully agreeing to withhold and conceal

exculpatory/favorable information that was required by law to be disclosed. Thus, the Plaintiff

federal conspiracy claim under §1985 (Count VI) should not be dismissed.

      43.     Alternatively, the Plaintiff should be permitted to amend his complaint to address

the impact of the <u>Brady</u> violations on the federal court process more clearly.

     **d.**     **<u>Plaintiff's neglect to prevent claim under 42 U.S.C. § 1986 (Count VII)
should not be dismissed</u>.**

      47.     The Defendant's allege that "absent a showing of conspiracy, the [plaintiff] has

no claim under § 1986, which extends to liability to those who knowingly failed to prevent

conspiracies under § 1985. (Doc. 7, pg.7).

48.     As set forth above the Plaintiff has pled sufficient facts to allege a §1985

conspiracy. Therefore the §1986 claim for failure to prevent is also properly pled and should not

be dismissed.

49.     Alternatively, the Plaintiff should be permitted to amend his complaint to address

the impact of the Brady violations on the federal court process and §1986 more clearly.

**State Law Claims**

> a.     **Plaintiff's negligence claim (Count IV) against the City of Lebanon/Lebanon Police Department is not barred by RSA 507-B.**

49.     The Defendants allege that Count IV is barred by RSA 507-B. However, the

municipality is not immune from its violation of a constitutional right perpetrated under the color

of state law, and the Plaintiff alleges sufficient facts to reasonably assert the claim.

50.     Municipal liability may be based on (1) an express municipal policy, such as an

internal police department policy (2) that has a widespread practice that, although not authorized

by written law or express municipal policy, is "so permanent and settled as to constitute a custom

or usage" with the force of law, or (3) the decision of a person with "final policymaking

authority." City of St. Louis v. Praprotnik, 485 U.S. 112, 123; see also Pembaur v. City of

Cincinnati, 475 U.S. 469, 481-83 (186).

51.     The following types of municipal policies and practices may give rise to liability.

> a. Deliberately indifferent training
> b. Deliberately indifferent supervision or discipline
> c. Deliberately indifferent hiring and
> d. Deliberately indifferent failure to adopt polices necessary to prevent constitutional violations.

52.     A municipality may be held liable when the enforcement of the municipal policy

or practice was the "moving force" behind the violation of the plaintiff's federally protected

right. Board of Comm'rs of Bryan County v. Brown, 520 U.S. 397, 400 (1997); see also City of

Canton v. Harris, 489 U.S 378, 388-89 (1989).

53.     To retain immunity, the officers must reasonably believe that their actions were

lawful. Farrelly v. City of Concord, 168 N.H. 430, 443 (2015).

54.     In the immunity context, a lack of "reasonable belief" means the official acted

with a higher level of culpability, i.e., recklessly and wantonly. Id. at 445.

55.     The acts of individual officers and police chiefs in failing to disclose material,

exculpatory, and relevant evidence is not barred by immunity. The Complaint sufficiently pleads

that the Defendants lacked a reasonable belief that their actions in withholding evidence were

lawful. The Defendant's actions demonstrate a callous disregard for both state and federal law

and constitutional rights. If not actually purposeful, the Defendants actions were at least wanton

and reckless.

56.     The Defendants actions do not qualify for immunity, and as officers are agents of

the police department and the City of Lebanon. The City does not have immunity. Thus, Count

IV should not be dismissed.

   **b.     Plaintiff's claims of civil conspiracy are not barred by the intracorporate
            conspiracy doctrine**.

57.     The Defendants alleges claims of civil conspiracy are barred by the intracorporate

conspiracy doctrine. The Defendants are mistaken.

58.     Intracorporate conspiracy doctrine cannot bar claims under 42 U.S.C. § 1985(2)

alleging criminal conspiracy is far from settled.

59.     Outside of the antitrust context, the scope of intracorporate conspiracy doctrine is

not settled. Several circuits, including the First Circuit, have recognized an exception to the

doctrine in the context of criminal fraud under 18 U.S. 371. United States v. Peters, 732 F.2d

1004, 1008 (1ˢᵗ Cir. 1984) ("The actions of two or more agents of a corporation, conspiring together on behalf of the corporation, may lead to conspiracy convictions of the agents (because the corporate veil does not shield them from criminal liability) and of the corporation (because its agents conspired on its behalf.")

60.     The New Hampshire Supreme Court has not decided whether the intracorporate conspiracy doctrine applies under New Hampshire law. Carney v. Town of Weare, Civil No. 15-cv-291-LM, at 44 (D.N.H. 2017); see also Ortolano v. City of Nashua, 22-cv-326-LM, at 24 (D.N.H. Sep. 28, 2023) ("In Carney, the court noted that New Hampshire had not adopted the doctrine, but it concluded that, if confronted with the issue, New Hampshire would adopt it based on traditional principles of agency.")

61.     Further, "under the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." Grider v. City of Auburn, 618 F.3d 1240, 1261 (11ᵗʰ Cir. 2010). However, the complaint alleges that the Defendants "conspired and engaged in an unlawful agreement to accomplish withholding exculpatory/favorable information from the Plaintiff's criminal trial." (Doc. 1, ¶ 113, 120). This unlawful agreement was not within the scope of employment of the individual officers and police chiefs.

62.     As this matter is far from settled as the Defendant's allege and outside the scope of employment, the Plaintiff's claims of civil conspiracy are not barred by the intracorporate conspiracy doctrine in New Hampshire.

**CONCLUSION**

For the reasons set forth above, the Plaintiff requests that the Court deny the Defendant's

partial motion to dismiss, or alternatively, allow him to amend his Complaint to assert his claims

more clearly.

Respectfully submitted,
Scott Traudt,
By and through counsel,
Brennan Lenehan Iacopino & Hickey

Date:  February 23, 2024                    By: /s/ Michael J. Iacopino
                                            Michael J. Iacopino, Esq. (NH Bar No. 1233)
                                            85 Brook Street
                                            Manchester, NH 03104
                                            (603) 668-8300
                                            miacopino@brennanlenehan.com


**CERTIFICATE OF SERVICE**

I certify that a copy of this filing was served via the Court's ECF filing system upon
All parties and counsel of record.

Dated: February 23, 2024                    By: /s/ Michael J. Iacopino
                                                Michael J. Iacopino