UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Scott Traudt

     v.

Lebanon Police Department et al.

Civil No. 23-cv-500-LM-TSM
Opinion No. 2025 DNH 045 P

**O R D E R**

Plaintiff Scott Traudt brings this action against the City of Lebanon ("the City"), the Lebanon Police Department ("the Department"), and four Lebanon police officers: Officer Phillip Roberts, Officer Richard Smolenski, Chief James Alexander, and Chief Gary Smith.[1] Traudt alleges defendants failed to disclose police disciplinary records prior to his state court criminal trial and related federal court action.

In a prior order, the court granted in part and denied in part a motion to dismiss brought by the City, the Department, Officer Roberts, and Chief Alexander.[2] Traudt v. Lebanon Police Dep't, 749 F. Supp. 3d 251, 262-63 (D.N.H.

---

[1] Plaintiff does not include Chief Gary Smith in his proposed amended complaint, but he remains a defendant under the operative original complaint.

[2] In the prior order, the court dismissed the following: all claims against Officer Roberts and Chief Alexander in their official capacities; the portions of Counts I-III that alleged state constitutional claims; Count IV's negligence claim as brought against the City and the Lebanon Police Department; Count V's civil conspiracy claim in its entirety; and Count VI to the extent it alleged a conspiracy to obstruct a state court proceeding, rather than a federal one. After the order, the following claims remained: the federal constitutional claims in Counts I-III; Count IV's negligence claim against Officers Roberts and Smolenski, Chief Alexander, and Chief Smith; Count VI's § 1985 claim to the extent it alleges obstruction of a federal court proceeding; and Count VII's § 1986 claim.

2024). In addition, the court granted Traudt leave to seek to amend his complaint to specify and supplement his allegations regarding his civil conspiracy claim under 42 U.S.C. § 1985. Id. at 262. The court also granted Traudt leave to seek to amend his complaint to bring his state constitution claims pursuant to a cause of action other than 42 U.S.C. § 1983. Id. Currently before the court is Traudt's motion to amend his complaint Doc. no. 17. Defendants object on grounds of futility. Doc. no. 18.

For the following reasons, Traudt's motion to amend (doc. no. 17) is denied.

## STANDARD OF REVIEW

Fed. R. Civ. P. 15(a) allows a pleading to be amended once as a matter of course within twenty-one days after service of the pleading or, if the pleading requires a response, within twenty-one days after service of a responsive pleading. Fed. R. Civ. P. 15(a)(1). In other circumstances, a party may amend its pleading only with the court's leave, which the court "should freely give . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). The court may deny a proposed amendment for several reasons, including "undue delay, bad faith, dilatory motive of the requesting party, repeated failure to cure deficiencies, and futility of amendment." Hagerty ex rel. United States v. Cybertronics, Inc., 844 F.3d 26, 34 (1st Cir. 2016) (quotation omitted).

In evaluating whether the proposed amendment is futile, the court uses the standard which applies to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Tillotson v. Dartmouth-Hitchcock Med. Ctr., Civ. No. 16-cv-296-LM, 2017 WL 3891786, at *2 (D.N.H., Sept. 5, 2017). Under Rule 12(b)(6), the court must

2

"accept the factual allegations in the proposed amended complaint as true, construe reasonable inferences in the plaintiffs' favor, and determine whether the factual allegations in the complaint 'set forth a plausible claim upon which relief may be granted.'" Id. at *2 (quoting Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## BACKGROUND[3]

Officers Roberts and Smolenski arrested Traudt in connection with a traffic stop in the early morning hours of January 14, 2007. Traudt alleges that the officers attacked him without provocation or justification, causing severe injury. Traudt was charged with one count of disorderly conduct and two counts of simple assault on a police officer.

Because the interaction between Traudt and the officers was not recorded, the evidence at trial turned on the credibility of the officers' testimony. Prior to trial, Traudt requested both officers' disciplinary records, but the State disclosed nothing to Traudt.[4] During closing argument, the State highlighted the lack of any evidence that the officers had marks on their disciplinary records. The jury

---

[3] The following facts are drawn from Traudt's proposed amended complaint (doc. no. 17).

[4] It is not clear whether the State denied the existence of any records or simply denied there were records responsive to Traudt's request. The complaint states that the State "den[ied] that any records existed and were subject to disclosure."

convicted Traudt on the disorderly conduct charge and one of the simple assault charges.[5] The trial court sentenced him to a term of one-to-three years in prison. The New Hampshire Supreme Court upheld his conviction on appeal. State v. Traudt, No. 2009-0150, at *1 (N.H. Feb. 4, 2010).

On January 12, 2010, after his release from prison, Traudt filed a pro se civil action in this court against Officer Roberts, Officer Smolenski, Chief Alexander, and the City of Lebanon, seeking damages for the injuries allegedly caused by the officers and for violations of his civil rights ("First Federal Lawsuit"). During discovery in the First Federal Lawsuit, Traudt requested that defendants produce documents pertaining to the disciplinary records of Officers Roberts and Smolenski. Defendants responded that there were "none." In addition, defendants provided answers to interrogatories indicating no disciplinary documents existed in either officers' personnel files. And Officer Smolenski refused to answer deposition questions about his disciplinary record.[6] Also during discovery, Traudt learned for the first time that Officer Smolenski had been disciplined by the Lebanon Police Department in 2006 (the year prior to Traudt's arrest). Traudt learned about this when the defendants filed a motion for in camera review to determine the discoverability of Officer Smolenski's disciplinary record. Chief Alexander and Chief Smith provided District Judge Laplante with a confidential affidavit stating they

_____

[5] The date of the jury trial is not clear from Traudt's proposed amended complaint.

[6] It is not clear from Traudt's proposed amended complaint whether Officer Roberts was also deposed.

4

did not believe Traudt's requested disciplinary material was <u>Laurie</u> material. <u>See</u> <u>State v. Laurie</u>, 139 N.H. 325 (1995) (ordering new trial where prosecutor failed to turn over police officer personnel records). Judge Laplante conducted an in camera review of Officer Smolenski's disciplinary records. He concluded that they were not discoverable under federal law, and declined to rule on whether they were subject to disclosure under New Hampshire law pursuant to <u>State v. Laurie</u> and its progeny. <u>See</u> <u>Traudt v. Roberts</u>, No. 10-CV-12-JL, 2013 WL 3712437, at *5-6 (D.N.H. July 12, 2013); <u>see also</u> <u>Laurie</u>, 139 N.H. at 330. In 2013, the court granted defendants' motion for summary judgment in the First Federal Lawsuit. <u>See</u> <u>Traudt v. Roberts</u>, No. 10-CV-12-JL, 2013 WL 3754862, at *1-2 (D.N.H. July 15, 2013).

Traudt attempted unsuccessfully for several years thereafter to obtain further details regarding Officer Smolenski's disciplinary records. For example, he filed a pro se petition for a writ of habeas corpus in this court, but the court denied plaintiff's petition because he was no longer in custody. <u>See</u> <u>Traudt v. N.H. Att'y Gen.</u>, No. 13- cv-234-PB (D.N.H. Mar. 24, 2014) (doc. no. 11). He also sought relief unsuccessfully in New Hampshire state court.  In 2021, Traudt received details regarding Officer Smolenski's records, which showed that he had been disciplined for certain conduct relating to a romantic relationship. That same year, in 2021 Traudt received information that Officer Roberts had been involved in an alleged assault in 2002 in Vermont. Plaintiff alleges "[u]pon information and belief" that Vermont authorities informed the Lebanon Police Department of Officer Roberts' alleged involvement in this assault before Traudt's trial. Doc. no. 17-1 ¶ 64.

In 2022, plaintiff filed another action for post-conviction relief in New Hampshire state court, arguing that the State's failure to disclose the information regarding Officers Smolenski and Roberts violated his rights under the New Hampshire and United States Constitutions. In an order dated January 3, 2023, the state court vacated Traudt's convictions and granted him a new trial. Thereafter, the State voluntarily dismissed (or "nolle prossed") the charges. Traudt filed this action in 2023. Traudt primarily seeks to hold defendants liable for violating his constitutional rights under Brady v. Maryland, 373 U.S. 83, 87 (1963) and its progeny. That claim survives in Traudt's federal constitutional claims (Counts I-III of his original complaint).

## DISCUSSION

Traudt has now filed a motion to amend his complaint to allege a civil conspiracy pursuant to the federal proceedings clause in 42 U.S.C. § 1985(2), and to allege a claim for neglecting to prevent that conspiracy under 42 U.S.C. § 1986. Traudt also seeks to amend his complaint to bring his state constitutional claims pursuant to the New Hampshire Constitution. Defendants object on grounds of futility.

I.  Plaintiff's Proposed Amended Complaint Fails to State a Claim for Civil Conspiracy Under 42 U.S.C. § 1985(2).

In Count VI of his original complaint, Traudt alleged one count of civil conspiracy under 42 U.S.C. § 1985(2) against all defendants. That statute contains two clauses: one that applies to federal court proceedings, and a second that applies

to state court proceedings. Traudt's original complaint failed to specify the clause under which he intended to bring his claim, and he now seeks to amend the complaint to specifically allege a violation of the federal proceedings clause. Traudt also seeks to supplement his factual allegations regarding this claim. Defendants object on grounds of futility, arguing that Traudt's proposed amended complaint fails to state a claim upon which relief may be granted.

42 U.S.C. § 1985(2) derives from § 2 of the Ku Klux Klan Act, a statute passed during the Reconstruction Era to protect parties and witnesses from conspiracies that were aimed at preventing them from attending or testifying in court. Brawer v. Horowitz, 535 F.2d 830, 837, 839 (3rd Cir. 1976). Today, the portion of § 1985(2) addressed to federal court proceedings remains largely unchanged: it prohibits conspiracies to deter "by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein." 42 U.S.C. § 1985(2).

Section 1985 protects against only "direct violations of a party or witness's right to attend or testify in federal court." Arroyo-Torres v. Ponce Fed. Bank, F.B.S., 918 F.2d 276, 279 (1st Cir. 1990) (quoting Kimble v. D.J. McDuffy, Inc., 648 F.2d 340, 348 (5th Cir. 1981)). A party must allege that defendants' actions directly interfered with their ability to attend or testify in court. See, e.g., Chahal v. Paine Webber, 725 F.2d 20, 23, 24 (2nd Cir. 1984) (finding a violation of § 1985(2) for direct interference with ability to testify when the key witness's employer, following a phone call from defendants, threatened to fire the witness for testifying).

Generally, withholding exculpatory information does not constitute a "direct" interference with a party or witness's right to attend or testify in court. See Brawer, 535 F.2d at 840; Gladu v. Ross, Civ. No. 15-CV-274, 2017 WL 1403157, at *2 (D. Maine Apr. 19, 2017). In Brawer, for example, the plaintiff alleged that prosecutors and a cooperating witness conspired to conceal exculpatory evidence. 535 F.2d at 840. The court held as a matter of law that this conduct was not a § 1985(2) violation. Id. It drew on the statute's legislative history to conclude that withholding exculpatory evidence did not rise to the level of the kind of direct intimidation and threats directed at parties, witnesses, or jurors that the law was meant to guard against. Id. Instead, the court reasoned that concealing exculpatory evidence constituted only an indirect influence on the jury by preventing them from considering fully accurate evidence, which was an influence "too remote to fit within the intended ambit of" § 1985(2). Id. Likewise, in Gladu, the plaintiff alleged that the defendants withheld exculpatory video evidence showing he had been assaulted by a corrections officer. 2017 WL 1403157, at *2. The District of Maine held that deprivation of this exculpatory video evidence was not a violation of § 1985(2) because it did not directly deter plaintiff from attending or testifying in court. Id. Spoilation of evidence, it held, is not a § 1985 violation. Id.

In Count V of his proposed amended complaint, Traudt alleges that defendants' conduct in suppressing exculpatory evidence amounted to intimidation designed to undermine his ability to attend court and testify freely, fully, and truthfully. Traudt argues that intimidation under § 1985 can refer to the act of

placing someone in fear of harm, including nonviolent harm. Traudt alleges that defendants directly interfered with his right to testify in the following four ways: (1) defendants responded "none" to a discovery request for documents involving disciplinary actions and oral sanctions against the defendants; (2) defendants provided answers to interrogatories indicating there were no disciplinary documents in the files of Officers Roberts and Smolenski; (3) Officer Smolenski refused to answer deposition questions regarding disciplinary actions taken against him; and (4) Chiefs Smith and Alexander submitted an affidavit during the pendency of Traudt's First Federal Lawsuit stating that information sought by Traudt was not Laurie material. Traudt contends that these actions placed him in fear of harm, including to his reputation and property, and led to the dismissal of his First Federal Lawsuit.

Construing Traudt's factual allegations as true, the proposed amended complaint does not allege sufficient facts to support the claim of civil conspiracy under § 1985(2). As in Brawer, Traudt alleges only that defendants conspired to withhold exculpatory evidence. Traudt does not allege that defendants used direct intimidation or threats to affect Traudt's ability to testify or attend court. While troubling, the allegations do not rise to the level of misconduct that § 1985(2) was intended to prevent: direct intimidation and threats designed to prevent a witness from testifying in court. See, e.g., Brawer, 535 F.2d at 840.

II.  **Because Count V of the proposed amended complaint fails to state a claim upon which relief may be granted, it would be futile for Traudt to amend his complaint to pursue this claim. Plaintiff's Proposed Amended Complaint Fails to State a Claim for Neglect to Prevent Conspiracy Under 42 U.S.C. § 1986.**

In Count VII of his original complaint, Traudt sought to bring a "neglect to prevent conspiracy" claim under 42 U.S.C. § 1986. Because that claim depended on the viability of the § 1985 claim, the court declined to dismiss Count VII before giving Traudt an opportunity to supplement his § 1985 claim. Traudt again asserts a § 1986 claim in the proposed amended complaint.

Section 1986 "extends liability to those who knowingly failed to prevent conspiracies under § 1985." Maymí v. P.R. Ports Auth., 515 F.3d 20, 31 (1st Cir. 2008). However, where a plaintiff fails to state a claim under § 1985, he necessarily fails to state a claim under § 1986. See id. Here, Traudt has failed to plausibly allege a conspiracy under § 1985, so amendment of his § 1986 claim would also be futile.

III.  **Plaintiff's Proposed State Constitutional Claims Fail to Identify a Recognized Cause of Action**

In Counts I-III of his original complaint, plaintiff brought claims for violations of the New Hampshire Constitution pursuant to 42 U.S.C. § 1983. This court dismissed those claims because § 1983 provides no cause of action for violations of state law. The court granted plaintiff leave to seek to amend the complaint to bring his state constitutional claims under some other cause of action.

10

Count VII[7] of Traudt's proposed amended complaint now alleges a violation of Part I, Article 15 of the New Hampshire Constitution, which provides that "every subject shall have a right to produce all proofs that may be favorable to himself." Defendants object on grounds of futility, arguing that Count VII fails to state a cognizable claim under the New Hampshire Constitution.

The New Hampshire Constitution does not specify remedies for violations of its provisions. Marquay v. Eno, 139 N.H. 708, 721-22 (1995). Once an infringement of the New Hampshire state constitution has been established, "the issue becomes one of the 'appropriate way to redress the denial.'" Marquay v. Eno, 139 N.H. 708, 721 (1995) (quoting Rockhouse Mt. Property, 127 N.H. at 598, 503 A.2d at 1388). The New Hampshire Supreme Court has not recognized a private cause of action under Part I, Article 15 of the New Hampshire Constitution. A federal court is not the appropriate entity to create a new constitutional tort in the first instance. See Elwell v. Correia, 578 F. Supp. 3d 259, 262 (D.N.H. 2022) (citing Marquay v. Eno, 139 N.H. 708, 721-22 (1995)) (stating that the New Hampshire Constitution "does not provide remedies for violations").

Because the New Hampshire Supreme Court has not recognized a private right of action for violations of Part I, Article 15 of the New Hampshire Constitution, and this court is not the appropriate forum to recognize a state

---

[7] Count VII of Traudt's original complaint describes his § 1986 claim. Count VII of Traudt's proposed amended complaint alleges a violation of Part I, Article 15 of the New Hampshire Constitution.

constitutional tort in the first instance, Traudt's proposed amendment of this claim would be futile.

## CONCLUSION

For these reasons, Traudt's motion to amend (doc. no. 17) is denied. Given the deficiencies identified in this order, the court also dismisses Traudt's § 1985 conspiracy claim (Count VI of the original complaint) and his § 1986 claim (Count VII of the original complaint). As a result of this order, the following claims remain: Counts I-III to the extent they allege violations of the U.S. Constitution; and Count IV to the extent it alleges negligence against the individual officers.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

March 31, 2025

cc:    Counsel of Record

12