UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Scott Traudt

       v.

Lebanon Police Department et al

Civil No. 23-cv-500-LM-TSM
Opinion No. 2026 DNH 087 P

## **O R D E R**

Plaintiff Scott Traudt brings this action against several current and former police officers for the City of Lebanon, as well as the City and its police department. The gravamen of Traudt's complaint is that the defendants unlawfully failed to disclose police disciplinary records prior to Traudt's state court criminal trial. Presently before the court is Officer Richard Smolenski's motion for judgment on the pleadings. Doc. no. 25. Traudt objects. Doc. no. 27. For the following reasons, Officer Smolenski's motion (doc. no. 25) is granted in part and denied in part.

## **STANDARD OF REVIEW**

"The standard of review of a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is the same as that for a motion to dismiss under Rule 12(b)(6)," Frappier v. Countrywide Home Loans, Inc., 750 F.3d 91, 96 (1st Cir. 2014) (quoting Marrero-Gutierrez v. Molina, 491 F.3d 1, 5 (1st Cir. 2007)), with the exception that the court considers the defendant's answer as well as the plaintiff's complaint, Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54-55 (1st Cir. 2006). "Like Rule 12(b)(6), Rule 12(c) does not allow for any resolution of contested facts; rather, a court may enter judgment on the pleadings only if the uncontested

and properly considered facts conclusively establish the movant's entitlement to a favorable judgment." Id. at 54. The court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Ortolano v. City of Nashua, 680 F. Supp. 3d 70, 76 (D.N.H. 2023) (quoting Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71, 75 (1st Cir. 2014)). In addition, the court may consider matters susceptible to judicial notice, such as public records in other judicial proceedings. See id. at 75. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Analyzing plausibility is "a context-specific task" in which the court relies on its "judicial experience and common sense." Id. at 679.

## BACKGROUND[1]

Traudt and his wife Victoria were stopped at a traffic light in Lebanon in the early morning hours of January 14, 2007. Victoria (the driver) signaled her intention to turn right, then did so. Officer Phillip Roberts stopped the car, claiming that Victoria ran the red light. Victoria gave Officer Roberts her license but could not initially find her registration. While Victoria looked for her registration, Officer Roberts returned to his cruiser with Victoria's license. Victoria found her

---

[1] The following well-pled facts are alleged in Traudt's complaint (doc. no. 1). They are assumed to be true for purposes of this order.

registration and got out of the car to give it to Officer Roberts. While at the cruiser, Officer Roberts questioned Victoria about what she had been doing earlier in the evening. Victoria acknowledged that she had had a few drinks. Officer Roberts asked Victoria to perform field sobriety tests, and Victoria agreed.

While Officer Roberts was speaking with Victoria near his cruiser, Officer Smolenski arrived. Traudt exited the passenger seat of the car when the field sobriety tests began, asking if Victoria was okay. Although Traudt remained by the passenger door of his vehicle, Officer Smolenski began yelling at Traudt and demanded he get back in the car. When Traudt did not immediately get back in the car, Officers Smolenski and Roberts approached him. The officers grabbed Traudt and forced him to the ground. According to Traudt, the officers repeatedly punched him and shoved his face into the ground. He alleges they choked him, pepper-sprayed him, struck him with their batons, and dragged him to their cruiser. The officers' actions left Traudt with severe injuries.

Traudt was ultimately charged with two counts of assault on a police officer in violation of RSA 631:2-a and 651:6(g), as well as one count of disorderly conduct in violation of RSA 644:2, II(d). The interaction between Traudt and the officers was not recorded. Thus, Traudt's state court criminal trial in Grafton County Superior Court was essentially a "he-said, he-said"; Traudt claimed the officers attacked him without provocation or justification, while the officers claimed the opposite. The case therefore turned on the credibility of the officers' testimony.

Traudt requested the officers' disciplinary records prior to trial, but the State provided no records. Traudt alleges that Officer Smolenski was aware of Traudt's

3

records request and that Officer Smolenski denied that any such records existed. Doc. no. 1 ¶¶ 36-37. At trial, the prosecutor highlighted the officers' credibility by pointing to the lack of any evidence that the arresting officers had disciplinary records. The jury convicted Traudt of one of the assault charges as well as the disorderly conduct charge. The trial court sentenced him to a term of imprisonment of one-to-three years, and the New Hampshire Supreme Court upheld his conviction on appeal.

In January 2010, Traudt filed a pro se civil rights action in this court against Officer Smolenski and others, seeking damages for the injuries allegedly caused by the officers and for violations of his civil rights. See Traudt v. Roberts, Civ. No. 10-cv-12-JL (D.N.H. Jan. 12, 2010) [hereinafter "First Federal Lawsuit"] (doc. no. 1). The court granted the defendants' motion for summary judgment in 2013. See Traudt v. Roberts, Civ. No. 10-cv-12-JL, 2013 WL 3754862, at *1-2 (D.N.H. July 15, 2013).

During discovery, however, Traudt learned for the first time that Officer Smolenski had been disciplined by the Lebanon Police Department in 2006, prior to plaintiff's arrest. Defendants did not disclose these records to Traudt; instead, they filed a motion requesting that the court conduct an in camera review of Smolenski's records and order that they were not relevant to any of Traudt's claims in the First Federal Lawsuit and therefore not discoverable under the Federal Rules of Civil Procedure. See Traudt v. Roberts, Civ. No. 10-cv-12-JL, 2013 WL 3712437, at *5 (D.N.H. July 12, 2013). Defendants also requested a determination from the court that the records were not subject to disclosure under State v. Laurie and its

4

progeny. See id.; see also State v. Laurie, 139 N.H. 325 (1995). Following an in camera review, the court ruled that Officer Smolenski's records were not discoverable. Traudt, 2013 WL 3712437, at *6. However, the court declined to resolve whether the records were subject to disclosure under Laurie. Id.

Traudt thereafter attempted unsuccessfully for several years to obtain information regarding Officer Smolenski's disciplinary records. He filed a pro se petition for a writ of habeas corpus in this court, but the court denied Traudt's petition because he was no longer in custody. See Traudt v. N.H. Att'y Gen., Civ. No. 13-cv-234-PB (D.N.H. Mar. 24, 2014) (doc. no. 11). He also sought relief in New Hampshire state court. Traudt finally received details regarding Officer Smolenski's records in 2021 after the New Hampshire Supreme Court issued its decision in Seacoast Newspapers, Inc. v. City of Portsmouth, 173 N.H. 325 (2020), which held that police disciplinary records are not categorically exempt from disclosure under New Hampshire's "Right-to-Know" law, RSA ch. 91-A.[2]

Officer Smolenski's records showed that he had been disciplined for engaging in an extramarital affair and for handling a harassment complaint that his paramour filed against an unrelated third party. This gave the appearance that Officer Smolenski was not impartially investigating the harassment complaint but would instead impermissibly favor the complainant. The records also showed that Officer Smolenski had been emailing his affair-partner from the police station using

---

[2] Traudt was also able to obtain Officer Roberts' disciplinary records after the Seacoast Newspapers decision. Officer Roberts' records showed that he had been accused of assaulting an animal control officer in Vermont while employed as a Lebanon Police Officer.

City resources regarding matters that were "not [of] a work nature," and that he met with her while on duty approximately a dozen times. Doc. no. 1 at 9. The investigation into Officer Smolenski's misconduct resulted in a finding that he had engaged in "conduct unbecoming an officer," as well as a suspension without pay and being placed on probationary status after returning to work.

Traudt thereafter filed a petition for a writ of coram nobis in Superior Court, seeking vacatur of his convictions on the basis of the State's failure to disclose Officer Smolenski's disciplinary records. See generally Hart v. Warden, N.H. State Prison, 171 N.H. 709, 716-19 (2019) (discussing availability of writs of coram nobis). In January 2023, the Superior Court granted Traudt's petition and vacated his convictions. The Court held that, "[a]t the very least, the information should have been disclosed to [Traudt] because, given [that his theory] of the case was that the officers involved were renegade police officers and were not credible, the evidence of Smolenski's investigation and discipline would have been relevant to that defense or otherwise used as impeachment evidence." Doc. no. 1 at 12. The State later dismissed (or "nolle prossed") the charges.

Traudt commenced the instant suit against Officer Smolenski and others in November 2023. Following the court's prior orders (doc. nos. 16 & 23), the following claims remain against Officer Smolenski:

- Counts I and II: Traudt alleges that Officer Smolenski violated his rights to due process rights under the Fifth and Fourteenth Amendments as set forth in Brady v. Maryland, 373 U.S. 83 (1963), and its progeny by failing to disclose Officer Smolenski's disciplinary records in advance of Traudt's criminal trial; and

6

- Count IV: Officer Smolenski's failure to disclose his disciplinary records in advance of trial constitutes negligence under New Hampshire common law.

## DISCUSSION

Officer Smolenski moves for judgment on the pleadings with respect to all of Traudt's claims against him. The court first considers Officer Smolenski's arguments regarding the <u>Brady</u> claims before briefly addressing the plausibility of Traudt's negligence claim.

I.    *Brady*

Officer Smolenski seeks judgment on the pleadings regarding Traudt's <u>Brady</u> claims on several grounds. First, he asserts that they are untimely. Second, he contends that Traudt fails to plausibly allege that Officer Smolenski violated Traudt's constitutional rights. Third, he argues that, even if Traudt states a plausible <u>Brady</u> claim, he is entitled to qualified immunity. The court will consider each contention in turn.

A.    <u>Timeliness</u>

The statute of limitations is an affirmative defense. <u>Oullette v. Beaupre, 977 F.3d 127, 135 (1st Cir. 2020)</u>. Ordinarily, a motion to dismiss under Rule 12(b)(6) (or for judgment on the pleadings under Rule 12(c)) tests the sufficiency of a plaintiff's claims and "a complaint need not anticipate or overcome affirmative defenses." <u>Urena v. Travelers Cas. & Sur. Co. of Am.,</u> 714 F. Supp. 3d 31, 39 (D.N.H. 2024) (quoting <u>Schmidt v. Soklas,</u> 770 F.3d 241, 248 (3d Cir. 2014)). The court may

dismiss a plaintiff's claims on affirmative-defense grounds only when the plaintiff "'affirmatively plead[s] himself out of court' by alleging 'everything necessary to satisfy the affirmative defense.'" Id. (quoting Hyson USA, Inc. v. Hyson 2U, Ltd., 821 F.3d 935, 939 (7th Cir. 2016)). This is a demanding standard: a 12(b)(6) or 12(c) motion premised upon an affirmative defense must be denied when the complaint's allegations "leave open the possibility" that the defense may not apply. Id.

The limitations period that governs a plaintiff's § 1983 action is the limitations period for general personal injury actions in the state in which the alleged constitutional violation occurred. Oullette, 977 F.3d at 135. In New Hampshire, that limitations period is three years. RSA 508:4. However, while § 1983 borrows its limitations period from state law, "the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." Oullette, 977 F.3d at 135 (quoting Wallace v. Kato, 549 U.S. 384, 388 (2007)).

"Under federal law, a § 1983 claim accrues when the putative 'plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief.'" Id. (ellipsis omitted) (quoting Wallace, 549 U.S. at 388). In Heck v. Humphrey, the Supreme Court held that, where a § 1983 plaintiff seeks relief for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid, [the] plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Heck v. Humphrey, 512 U.S. 477, 486-87 (1994). In other words, a § 1983 claim that necessarily implies the invalidity of a

criminal conviction or sentence does not accrue until that conviction or sentence has been vacated. Id. at 489-90. "Brady-based § 1983 claims necessarily imply the invalidity of the challenged conviction in the trial (or plea) in which the Brady violation occurred." Poventud v. City of New York, 750 F.3d 121, 132 (2d Cir. 2014) (emphasis omitted); accord, e.g., Barone v. United States, Civ. No. 06-11923-RWZ, 2008 WL 11388577, at *3-4 (D. Mass. Sept. 25, 2008). "That should come as no surprise; the remedy for a Brady violation is vacatur of the judgment of conviction and a new trial in which the defendant now has the Brady material available to her." Poventud, 750 F.3d at 133 (emphasis omitted).

Here, Traudt's Brady claims did not accrue until his convictions were vacated in January 2023. He filed this action in November 2023, well within the applicable three-year limitations period. In seeking dismissal on timeliness grounds, Officer Smolenski does not meaningfully dispute Heck's applicability to this case. Instead, he asserts that it is unfair that Heck allows Traudt to "sit on his claims." Doc. no. 28 at 1. The court disagrees that Heck permits Traudt to pursue "stale claims." Id. Rather, Traudt did not have a Brady claim until his conviction was vacated; there was no claim in existence that he could have "sat on" before that point. See Heck, 512 U.S. at 489 (explaining that Heck rule "den[ies] the existence of a cause of action" until conviction is vacated; "the § 1983 claim has not yet arisen" prior to vacatur). While Officer Smolenski complains that Heck permits Traudt to pursue relief on the basis of an alleged unlawful conviction that occurred many years ago, this court is not free to disregard Heck's clear rule.

9

B.     Plausibility

Under Brady v. Maryland and its progeny, the failure to disclose evidence that is material and favorable to a criminal defendant violates due process. Drumgold v. Callahan, 707 F.3d 28, 38 (1st Cir. 2013). "[T]his affirmative disclosure obligation . . . encompasses evidence known only to law enforcement officers and not to prosecutors." Id. While law enforcement officers need not disclose Brady material to defendants directly, "law enforcement officers have a . . . duty to turn over to the prosecutor any material evidence that is favorable to a defendant." Id. The officer's nondisclosure need not have been done in bad faith; Brady imposes a "no-fault standard of care." Id. (quoting Porter v. White, 483 F.3d 1294, 1305 (11th Cir. 2007)). Thus, where an officer is aware of evidence that is material and favorable to a criminal defendant but fails to disclose that evidence to the prosecutor, the officer violates Brady. See id.

The undisclosed evidence must be (1) favorable and (2) material. Id. "Evidence is favorable to a defendant if it is either exculpatory or impeaching in nature." Id. "Evidence is material if there is a 'reasonable probability' that, had it been disclosed, the result of the proceeding would have been different." Id. at 38-39 (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)). To establish materiality, the defendant need not show "by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal." Kyles v. Whitley, 514 U.S. 419, 434 (1995); see also United States v. Avilés-Colón, 536 F.3d 1, 20 (1st Cir. 2008) ("There is a meaningful difference between the burden of establishing the likelihood of a different result at a new trial and the burden of

10

establishing a reasonable probability of a different outcome."). Rather, evidence is material if its suppression "undermines confidence in the outcome of the trial." Bagley, 473 U.S. at 678; see also Kyles, 514 U.S. at 434 ("The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.").

When assessing the materiality of impeachment evidence, courts must consider "the effect of its suppression in the context of the entire record." Conley v. United States, 415 F.3d 183, 189 (1st Cir. 2005). For example, the materiality of suppressed impeachment evidence is heightened when the witness to whom the evidence pertains is "essential to the conviction." Id. "The Supreme Court . . . has found Brady violations where the Government failed to disclose impeachment evidence that could have been used to impugn the credibility of the Government's 'key witness.'" Id. (citing Giglio v. United States, 405 U.S. 150, 154-55 (1972)).

Turning to the facts of this case, Officer Smolenski's attack on the plausibility of Traudt's Brady claims is two-pronged. First, he asserts that any constitutional obligation to disclose his disciplinary records belonged not to him but his supervisors and the prosecutor. That argument is a nonstarter. The law is clear that officers have an affirmative obligation to disclose to the prosecutor known evidence that is favorable and material. E.g., Brady v. Dill, 187 F.3d 104, 114 (1st Cir. 1999) (explaining that an officer may violate Brady "if he fails to apprise the prosecutor . . . of known exculpatory information"); see also Moldowan v. City of Warren, 578 F.3d 351, 381 (6th Cir. 2009) (collecting cases). The existence of this

11

obligation is not triggered by a request from an officer's supervisor or from a prosecutor to disclose any evidence in the officer's possession. Drumgold, 707 F.3d at 38 (pointing out that officers have an "affirmative . . . obligation" to disclose Brady material). Officer Smolenski is correct that Brady does not require the officer to disclose such evidence directly to the criminal defendant. Id. However, construing the allegations of the complaint in the light most favorable to Traudt and drawing all reasonable inferences in his favor, the complaint plausibly alleges that Officer Smolenski was aware of his own disciplinary records and that he failed to disclose them to the prosecutor (who relied on the lack of any disciplinary record in her closing argument). Assuming those records are favorable and material, Brady obligated him to do so.

Officer Smolenski next contends that Traudt has failed to plausibly allege facts which permit the inference that his disciplinary records were material.[3] Construing the complaint's factual allegations in the light most favorable to Traudt and drawing all reasonable inferences in his favor, the court disagrees. The complaint alleges that Traudt and Officer Smolenski presented starkly different accounts of what transpired the night of Traudt's arrest. Traudt alleged that the

---

[3] Officer Smolenski also asserts in passing that the court's order in the First Federal Action concluding that the records were not discoverable has res judicata effect on the Brady materiality question in this case. However, Officer Smolenski's assertion is insufficiently developed, and the court declines to construct his res judicata argument for him. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work . . . ." (citations omitted)).

officers brutally assaulted him when he inquired regarding his wife's wellbeing, while the officers claimed that Traudt was the assailant. The result of Traudt's trial therefore turned on whom the jury found believable. Officer Smolenski's disciplinary records showed that he had been suspended and placed on probation for misusing his position to secure protection for a woman with whom he was having an extramarital affair, and that he was using police resources to communicate with his paramour regarding matters that were "not of a work nature." As the Superior Court recognized in its order vacating Traudt's conviction, Traudt could have attempted to use these records on cross-examination to attack Officer Smolenski's credibility and in support of Traudt's defense that the officers were misusing their official positions to assault Traudt without any justification.

Nor can the court ignore that the State's closing argument specifically highlighted the lack of evidence that Officer Smolenski had any history of discipline. Even assuming Traudt could not have impeached Officer Smolenski with the disciplinary records prior to the State's closing argument, certainly the State's reliance on the lack of evidence that Officer Smolenski had any disciplinary records could have opened the door to admission of those records as a matter of fundamental fairness. See State v. Roman, 176 N.H. 367, 371 (2023) (explaining that otherwise inadmissible evidence may be introduced when the other party "creates a misleading advantage"). The disclosure of that evidence would also have provided a basis for Traudt to object to the State's closing argument.

Construing the allegations in the light most favorable to Traudt and drawing all reasonable inferences in his favor, he has plausibly alleged facts which permit

13

the court to reasonably conclude at this early stage that the failure to disclose Officer Smolenski's disciplinary records undermines confidence in the outcome of his trial.

C.    Qualified Immunity

Qualified immunity is a judicially created doctrine that often prevents plaintiffs in § 1983 actions from holding police officers civilly liable for violating their constitutional rights. Drumgold, 707 F.3d at 42. Under this doctrine, police officers are immune from liability for violating a plaintiff's constitutional rights unless "the right was clearly established at the time of the violation." Id. In assessing whether the right at-issue was clearly established, a court asks both "(a) whether the legal contours of the right in question were sufficiently clear that a reasonable officer would have understood that what he was doing violated the right, and (b) whether in the particular factual context of the case, a reasonable officer would have understood that his conduct violated the right." Mlodzinski v. Lewis, 648 F.3d 24, 32-33 (1st Cir. 2011).

Qualified immunity is not merely a defense to liability, but an immunity from suit. Pearson v. Callahan, 555 U.S. 223, 231 (2009). The Supreme Court has therefore "stressed the importance" of resolving qualified immunity as soon as possible so as "to ensure that 'insubstantial claims against government officials will be resolved prior to discovery.'" Id. at 231-32 (brackets omitted) (first quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam), and then quoting Anderson v. Creighton, 483 U.S. 635, 640 n.2 (1987)). At the same time, when

14

qualified immunity is raised at the Rule 12 stage or at summary judgment, the court must assess the immunity's applicability through the prism of the standard of review that pertains to such motions. Morelli v. Webster, 552 F.3d 12, 18-19 (1st Cir. 2009); see also Jakuttis v. Town of Dracut, 656 F. Supp. 3d 302, 318 (D. Mass. 2023) ("[C]ourts must maintain a balance between a defendant-official's interest in the early dismissal of claims as to which he is immune, and a plaintiff's interest in benefiting from the favorable standards afforded to him on a motion to dismiss or a motion for summary judgment."), aff'd in part and remanded in part on other grounds, 95 F.4th 22 (1st Cir. 2024).

Oftentimes, "advancing qualified immunity as grounds for a motion to dismiss is . . . a procedural mismatch," as the court "will often lack the 'robust factual record' it needs to decide whether an official is entitled to qualified immunity at this stage." Jakuttis, 656 F. Supp. 3d at 318-19 (first quoting Chamberlain ex rel. Chamberlain v. City of White Plains, 960 F.3d 100, 111 (2d Cir. 2020), then quoting Reed v. Palmer, 906 F.3d 540, 548 (7th Cir. 2018)). In other words, a court faced with a qualified immunity analysis at the Rule 12 stage must still assume the truth of the complaint's well-pled factual allegations, construe those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. See Morelli, 552 F.3d at 18-19. A court may dismiss a plaintiff's claim on qualified immunity grounds "when it is clear on the face of the complaint, accepting all of the plaintiff's well-pleaded factual allegations, that either the right allegedly violated was not clearly established or the

15

defendant's alleged actions were objectively reasonable under the circumstances." Jakuttis, 656 F. Supp. 3d at 319.

Accepting the complaint's factual allegations as true and drawing all reasonable inferences in Traudt's favor, the court finds at this early juncture that Traudt has plausibly alleged that Officer Smolenski's failure to disclose his disciplinary record to the prosecutor was objectively unreasonable and in violation of Traudt's clearly established constitutional rights. By the time of Traudt's state-court criminal trial,[4] it was clearly established that police officers have an affirmative obligation to disclose to the prosecutor material impeachment evidence regarding one of the State's key witnesses. Moldowan, 578 F.3d at 381 (collecting cases); accord, e.g., Dill, 187 F.3d at 114. Moreover, the complaint alleges that Officer Smolenski was aware of Traudt's request for his disciplinary records but declined to provide them to the prosecutor. In light of the prosecutor's closing argument highlighting the lack of any disciplinary marks on Officer Smolenski's records, the court agrees with Traudt that it is reasonable to infer that the prosecutor specifically inquired regarding Officer Smolenski's disciplinary records, and yet Officer Smolenski denied the existence of any such records. "[T]he law was firmly settled at the time of [Traudt's] criminal trial that a law enforcement officer may not deliberately suppress material evidence that is favorable to a defendant." Drumgold, 707 F.3d at 43.

---

[4] The precise date of Traudt's trial is not clear from the complaint. He alleges that he was arrested in January 2007, and released from prison in or about January 2010.

16

Officer Smolenski protests that New Hampshire has established a database for the uniform recording and disclosure to criminal defendants of information regarding investigating officers' credibility issues, that the decision to include a particular officer's disciplinary history in that database is not made by the officer but by his supervisors, and that Officer Smolenski's disciplinary records were not (and still are not) included in that database. Officer Smolenski asserts that it was objectively reasonable for him to rely on his supervisors' determination that his disciplinary record did not merit disclosure. However, Officer Smolenski's factual assertions are outside the four corners of the pleadings, and he fails to demonstrate that the court may appropriately consider his factual contentions at this early stage. See Jakuttis, 656 F. Supp. 3d at 318 (where resolution of qualified immunity defense relies on "the objective reasonableness of a defendant's conduct, based on the information in the defendant's possession at the time, . . . [f]actual disputes or undeveloped facts relevant to qualified immunity may preclude an early decision in such cases"). Officer Smolenski's qualified immunity defense is more appropriately addressed at summary judgment after the parties have had an opportunity to develop the factual record; he may renew his qualified immunity defense at that point.

For these reasons, the court cannot conclude at this early stage that Officer Smolenski is immune from liability for the Brady violation Traudt has plausibly alleged.

17

II.    Negligence

In addition to his Brady claims, Traudt asserts that Officer Smolenski's failure to disclose his disciplinary records constitutes negligence under New Hampshire common law. Officer Smolenski contends that Traudt fails to allege a plausible negligence claim. In his objection to Officer Smolenski's Rule 12 motion, Traudt failed to respond to Officer Smolenski's argument regarding his negligence claim.

To prevail on a negligence claim under New Hampshire law, the plaintiff must show that: (1) the defendant owed him a duty; (2) the defendant breached that duty; and (3) the breach proximately caused plaintiff's injury. Coan v. N.H. Dep't of Env't Servs., 161 N.H. 1, 7 (2010). "Whether a duty exists in a particular case is a question of law." Id. at 8.

Officer Smolenski contends that Traudt cannot show the existence of any duty under New Hampshire common law for police officers to provide criminal defendants or prosecutors with material impeachment evidence. The court is not aware of any such duty under New Hampshire common law, and Traudt cites no authorities—in New Hampshire or elsewhere—that support the existence of such a duty. To the extent Traudt seeks an extension of New Hampshire common law, "[f]ederal courts are not free to extend the reach of state law." Doe v. Trs. of Bos. Coll., 942 F.3d 527, 535 (1st Cir. 2019). For these reasons, the court finds that Traudt has not alleged a plausible negligence claim against Officer Smolenski.

18

**CONCLUSION**

Officer Smolenski's motion for judgment on the pleadings (doc. no. 25) is granted as to Traudt's negligence claim (Count IV) but denied as to his Brady claims (Counts I & II). The only claims remaining against Officer Smolenski are Counts I & II.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

June 30, 2026

cc:    Counsel of Record

19